**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| CHRISTIAN BLOW, | : | |
| | : | Civil No. 08-2307 (NLH) |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| WARDEN SCHULTZ, | : | |
| | : | |
| Respondent. | : | |

---

**APPEARANCES:**

> CHRISTIAN BLOW, Petitioner pro se
> #05401-082
> F.C.I. Fairton
> P.O. Box 420
> Fairton, New Jersey 08320
>
> CHRISTOPHER J. CHRISTIE, United States Attorney
> MICHAEL E. CAMPION, Assistant U.S. Attorney
> Office of the U.S. Attorney
> 970 Broad Street, Suite 700
> Newark, New Jersey  07102
> Attorneys for Respondent

**HILLMAN, District Judge**

Petitioner, Christian Blow ("Blow"), a federal prisoner confined at the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"), brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Blow names Warden Schultz,

the Warden at FCI Fairton where petitioner is confined, as the party respondent in this action.[1]

On August 21, 2008, the Government submitted a response to the petition.  This Court has reviewed the written submissions of the parties, and for the reasons stated below, the Court will deny the petition for lack of merit.

## I.   BACKGROUND

The following facts are taken from the petition, responsive brief, and the relevant record submitted by the Government. Petitioner is presently serving a 60-month prison term with a two-year term of supervised release based on his 2005 federal conviction in the United States District Court for the District of Vermont, on charges of conspiracy to make counterfeit U.S. currency and being a felon in possession of a firearm. Petitioner's projected release date is March 1, 2009.

Petitioner was designated to serve his prison term at FCI Fairton.  In March 2006, the Bureau of Prisons ("BOP") informed Blow that he could participate in the residential drug abuse treatment program ("RDAP") at FCI Fairton, but he would not be eligible for early release because he was convicted for possession of a firearm by a felon, in violation of 18 U.S.C.

---

[1]  Petitioner initially had named the United States District Court for the District of New Jersey as a party respondent, but the respondent was dismissed from this action with prejudice in an Order entered by this Court on July 17, 2008.  (Docket Entry No. 6).

§ 922(g)(1).  Blow signed the Notice, acknowledging its receipt. (See Declaration of Brian Redondo ("Redondo Decl.") at Exhibit 2, ¶ 2, Ex. 2a).  Blow did not pursue his administrative remedies at that time with respect to this Notice informing him of his ineligibility for early release upon completion of the RDAP.

Nevertheless, Blow began the RDAP on August 27, 2007, and completed the structured 500-hour class program on May 27, 2008. (Redondo Decl. at ¶ 3, Ex. 2b).  To complete the program, however, Blow must perform six months of transitional services in a Residential Re-Entry Center (a halfway house), which was scheduled to start on September 3, 2008.  (Id. at ¶ 3). Accordingly, petitioner has not completed fully all the requirements of the RDAP.

On March 25, 2008, Blow filed an administrative remedy challenging the BOP's determination that he was ineligible for early release consideration.  (See Declaration of Vanessa Herbin-Smith ("Herbin-Smith Decl."), Ex. 1, ¶ 4, Ex. 1b).  On April 7, 2008, the Warden denied petitioner's request.  (Id. at Ex. 1c). On April 10, 2008, Blow filed an appeal from the Warden's decision with the Regional Director.  This appeal was denied on May 13, 2008.  (Id. at ¶ 5, Ex. 1d, 1e).  Blow then filed this habeas petition on or about May 13, 2008.

In his petition, Blow contends that his successful completion of the 500-hour RDAP in May 2008 qualifies him to

receive the one-year incentive of early release intended by Congress.  (Petition at ¶ 10b).  Petitioner also argues that his conviction for simple possession of a firearm is a non-violent crime, thus making him eligible for early release.  (Pet. at ¶ 10b).  Finally, Blow asserts that the BOP is in violation of the Administrative Procedures Act ("APA"), having failed to give the public the allotted time for comment.  (Pet. at ¶¶ 10c, 10d).  Although Blow does not expressly cite to the case <u>Arrington v. Daniels</u>, 516 F.3d 1106 (9th Cir. 2008), in his petition, it appears that Blow did reference the case in his administrative appeal to the BOP Regional Director when arguing that the regulation at issue here was not promulgated properly under the APA.  (Herbin-Smith Decl. at ¶ 5, Ex. 1e).

## II.  <u>ANALYSIS</u>

### A.  <u>Standard of Review</u>

The Court recognizes that a <u>pro</u> <u>se</u> pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  Thus, a <u>pro</u> <u>se</u> habeas petition should be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989).  Because Blow is proceeding <u>pro</u> <u>se</u> in his application for habeas relief,

the Court will accord his petition the liberal construction intended for pro se litigants.

B.  An Overview of the RDAP

The Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA") amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  18 U.S.C. § 3621(b).  To carry out this requirement, the BOP must provide residential substance abuse treatment for all eligible inmates, subject to the availability of appropriations.  18 U.S.C. § 3621(e)(1).  An "eligible prisoner" is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B)(i) and (ii).  As an incentive for the successful completion of the residential treatment program, the BOP **may**, in its discretion reduce an inmate's sentence by up to one year.  18 U.S.C. § 3621(e)(2)(B); see also Lopez v. Davis, 531 U.S. 230 (2001).

The incentive provision of the statute reads, in pertinent part:

> The period a prisoner convicted of a **nonviolent offense** remains in custody after successfully completing a treatment program **may** be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B).  (Emphasis added).

The BOP has promulgated regulations at 28 C.F.R. § 550.56 to implement the statutory requirement.  According to the regulations, in order to be considered for a residential treatment program, an inmate must have a verifiable drug abuse problem, must have no serious mental impairment which would substantially interfere with or preclude full participation in the program, must sign an agreement acknowledging his program responsibility, and must ordinarily be within 36 months of release and the security level of the residential program institution must be appropriate for the inmate.  28 U.S.C. § 550.56(a).  Participation in the program is voluntary, but all decisions on placement are made by the drug abuse treatment coordinator.  See 28 C.F.R. § 550.56(b).  The application of § 550.56 is set forth in BOP Program Statement 5330.10.[2]

In these regulations, the BOP also defined prisoners who had not been convicted of a nonviolent offense, and who thus were ineligible for early release, as those prisoners who were

---

[2]  Program Statement 5330.10 defines the RDAP as consisting of three components: (1) a 500-hour minimum unit-based residential program; (2) an institution transition phase, which requires participation for a minimum of one hour a month over a period of 12 months after successfully completing the unit-based program; and (3) a community transitional services program where the inmate is transferred to a halfway house or home confinement for a period lasting up to six months.  Successful completion of the RDAP occurs upon successful completion of each of these three components of the RDAP.  See 28 C.F.R. §§ 550.56, 550.59.

currently incarcerated for committing a crime of violence as
defined in 18 U.S.C. § 924(c)(3). 28 C.F.R. § 550.58 (1995); see
60 Fed. Reg. 27,692, at 27,695. Following the promulgation of
this 1995 regulation, the Courts of Appeals reached differing
conclusions on the question of whether the BOP had discretion to
further define a crime of violence as an offense involving a
firearm, and thus exclude from eligibility for the early release
incentive those prisoners who were incarcerated for such
offenses. See generally Lopez v. Davis, 531 U.S. at 234-35.[3]

--------

[3] In Lopez, the Supreme Court held that it was a proper
exercise of discretion by the Bureau of Prisons to categorically
deny eligibility for early release to prisoners with "a prior
felony or misdemeanor conviction for homicide, forcible rape,
robbery, or aggravated assault, or child sexual abuse offenses,"
28 C.F.R. § 550.58(a)(1)(iv), or to prisoners whose current
offense is one of certain enumerated felonies involving the use
or attempted use of force, or involving the carrying, possession,
or use of a firearm or other dangerous weapon, or involving
sexual abuse upon children, 28 U.S.C. § 550.58(a)(1)(vi). In
reaching this conclusion, the Court first noted that the language
of § 3621(e)(2)(B) grants the Bureau discretion to reduce a
prisoner's sentence for successful completion of a substance
abuse treatment program, but fails to define any parameters by
which the Bureau should exercise that discretion.

   In this familiar situation, where Congress has enacted
   a law that does not answer "the precise question at
   issue," all we must decide is whether the Bureau, the
   agency empowered to administer the early release
   program, has filled the statutory gap "in a way that is
   reasonable in light of the legislature's revealed
   design." We think the agency's interpretation is
   reasonable both in taking account of preconviction
   conduct and in making categorical exclusions.

Lopez, 531 U.S. at 242 (citing, inter alia, Chevron, U.S.A., Inc.
v. National Resources Defense Council, Inc., 467 U.S. 837, 842
(1984))(other citations omitted). Thus, "the statute's
restriction of early release eligibility to nonviolent offenders

Given the split among the Circuits, the BOP promulgated an interim regulation on October 15, 1997, and made the regulation effective approximately one week prior, on October 9, 1997.  28 C.F.R. § 550.58(a)(1)(vi)(B)(1997); 62 Fed. Reg. 53,690.  The 1997 interim regulation, like the one it superseded, made ineligible for the early release incentive those prisoners incarcerated for an offense that involved the possession, use, or carrying of a firearm.  28 C.F.R. § 550.58(a)(1)(vi)(B).  The 1997 interim regulation differs from the 1995 regulation by relying on "the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude [enumerated categories of] inmates," 62 Fed. Reg. At 53,690, rather than purporting to define the statutory terms "prisoner convicted of a nonviolent offense" or "crime of violence."

The commentary accompanying publication of the 1997 interim regulation noted that the BOP was "publishing this change as an interim rule in order to solicit public comment while continuing to provide consideration for early release to qualified inmates." 62 Fed. Reg. At 53,690.  Nevertheless, the effect of the implemented interim regulation was to deny program eligibility to certain categories of inmates confined at that time and until

---

does not cut short the considerations that may guide the Bureau." Lopez, 531 U.S. at 242.  See also Magnin v. Beeler, 110 F.Supp.2d 338 (D.N.J. 2000) (upholding 28 C.F.R. §550.58(a)(1)(vi), before Lopez, as a valid exercise of the Bureau's discretion).

promulgation of a final regulation.  The commentary to the
interim regulation further provided that comments on the interim
rule were due on December 15, 1997, and that the comments would
be considered before final action was taken.[4]

Three years later, on December 22, 2000, the BOP replaced
the 1997 interim regulation with a final regulation, which
adopted the 1997 interim regulation without change.  See 65 Fed.
Reg. 80,745.  The final regulation was effective as of December
22, 2000.  Id.  The commentary accompanying the final regulation
noted that the BOP had received and considered approximately 150
comments from individuals and organizations, 138 of which were
identical.  Id. at 80,747.  Thus, the final regulation read, in
pertinent part, as follows:

> Consideration for early release.
>> An inmate who was sentenced to a term of imprisonment
>> pursuant to the provisions of 18 U.S.C. Chapter 227,
>> Subchapter D for a nonviolent offense, and who is
>> determined to have a substance abuse problem, and
>> successfully completes a residential drug abuse
>> treatment program during his or her current commitment
>> may be eligible, in accordance with paragraph (a) of
>> this section, for early release by a period not to
>> exceed 12 months.
>> (a) Additional early release criteria.

---

[4]  In Lopez v. Davis, while the Supreme Court held that the
1997 interim regulation's categorical exclusion of prisoners
based on their involvement with firearms in connection with the
commission of a felony was a permissible exercise of the Bureau's
discretion, the Court declined to consider the arguments of
various amici that the 1997 interim regulations violated the
notice-and-comment provisions of the APA, as that argument had
not been raised or decided below, or presented in the petition
for certiorari.  531 U.S. at 230, 244 n.6.

> (1) As an exercise of the discretion vested in the
> Director of the Federal Bureau of Prisons, the
> following categories of inmates are not eligible for
> early release:
> . . .
> (vi) Inmates whose current offense is a felony:
> . . .
> (B) That involved the carrying, possession, or use of a
> firearm or other dangerous weapon or explosives
> (including any explosive material or explosive device),
> ...

5 U.S.C. § 550.58 (2000).  The regulation has remained unchanged since 2000.  See also BOP Program Statements 5330.10, *Drug Abuse Programs Manual – Inmate* (1997), and 5162.04, § 7, *Categorization of Offenses* (1997)("All offenses under 18 U.S.C. § 922(g) shall preclude an inmate from receiving certain Bureau program benefits.").

The Administrative Procedure Act requires, with exceptions not relevant here, that proposed rules be published in the Federal Register, not less than 30 days before the proposed rule's effective date, and provide a period for interested persons to comment on the proposed rule, which comments are to be considered by the agency prior to adopting the rule.  See 5 U.S.C. § 553(b), (c), (d).

Following promulgation of the 1997 interim regulation, the United States Court of Appeals for the Ninth Circuit determined that the 1997 interim regulation was invalid, for failure to follow the notice-and-comment requirements of the APA.  See Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005).  The 2000 final

rule, however, complied with the notice-and-comment requirements. More recently, the Court of Appeals for the Ninth Circuit has held that the final 2000 rule is invalid, nevertheless, as "arbitrary and capricious" in violation of § 706(2)(A) of the APA, for failure to set forth a rationale for its categorical exclusion rule.  <u>Arrington v. Daniels</u>, 516 F.3d 1106 (9th Cir. 2008).  It is principally upon the <u>Arrington</u> decision that petitioner Blow relies here.[5]

C.   <u>Exhaustion of Administrative Remedies</u>

As an initial matter, this Court notes that petitioner did not fully exhaust his administrative remedies before filing this habeas petition.  Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.[6]  <u>See</u>, <u>e.g.</u>,

_____

[5]  As mentioned previously in this Opinion, Blow apparently had raised the <u>Arrington</u> decision in his administrative appeal, but did not do so here.  While he does not expressly cite <u>Arrington</u>, his claims and arguments for relief are substantially based on the <u>Arrington</u> decision.

[6]  To exhaust administrative remedies before the Federal Bureau of Prisons, a federal inmate seeking review of an aspect of his confinement must first seek to resolve the dispute informally.  <u>See</u> 28 C.F.R. § 542.13.  If the inmate does not receive a favorable termination, he may submit a formal written Administrative Remedy Request for response by the warden of the facility.  <u>See</u> 28 C.F.R. § 542.14.  If the inmate is not satisfied with the warden's response, he may appeal the warden's decision to the Regional Director within 20 days of the date of

<u>Callwood v. Enos</u>, 230 F.3d 627, 634 (3d Cir. 2000); <u>Arias v.</u>
<u>United States Parole Comm'n</u>, 648 F.2d 196, 199 (3d Cir. 1981);
<u>Soyka v. Alldredge</u>, 481 F.2d 303, 306 (3d Cir. 1973).  The
exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a
> factual record and apply its expertise facilitates
> judicial review; (2) permitting agencies to grant the
> relief requested conserves judicial resources; and (3)
> providing agencies the opportunity to correct their own
> errors fosters administrative autonomy.

<u>Goldberg v. Beeler</u>, 82 F. Supp.2d 302, 309 (D.N.J. 1999), <u>aff'd</u>,
248 F.3d 1130 (3d Cir. 2000).  <u>See also</u> <u>Moscato v. Federal Bureau</u>
<u>of Prisons</u>, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless,
exhaustion of administrative remedies is not required where
exhaustion would not promote these goals.  <u>See</u>, <u>e.g.</u>, <u>Gambino v.</u>
<u>Morris</u>, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required
where petitioner demonstrates futility); <u>Lyons v. U.S. Marshals</u>,
840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where
it "would be futile, if the actions of the agency clearly and
unambiguously violate statutory or constitutional rights, or if
the administrative procedure is clearly shown to be inadequate to
prevent irreparable harm"); <u>Carling v. Peters</u>, 2000 WL 1022959,

---

the decision.  If he is not satisfied with the Regional
Director's response, he may submit an appeal of the Regional
Director's decision to the Central Office within 30 days of the
date of the decision.  <u>See</u> C.F.R. § 542.15.  If these responses
are not received by the inmate within the time allotted for
reply, "the inmate may consider the absence of a response to be a
denial at that level."  28 C.F.R. § 542.18.

*2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In Snisky v. Pugh, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit.  See 974 F. Supp. 817, 819 (M.D. Pa. 1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998).  The court recognized that exhaustion could be excused where it would be futile.  See id.  In Snisky, the court found that the BOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial.  Thus, the court addressed the claims on the merits.

Likewise, in Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. See 990 F. Supp. 367, 370 (D.N.J. 1998)(citing Snisky, 974 F. Supp. at 819-20).  Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached.  See id.  See also Fraley v. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

Here, this Court notes that petitioner has an imminent release date that would make full exhaustion in this case futile.

Therefore, this Court will review the merits of Blow's petition rather than dismiss it on this procedural ground.

D.   Petitioner Is Not Eligible for Early Release

This Court finds that Blow is not eligible for early release under 18 U.S.C. § 3621(e)(2)(B), because he did not successfully complete all of the requirements of the RDAP.  Blow has completed only the 500-hour residential program.  He has not completed the institutional transition phase or the community transitional services program that also are required to be considered for successful completion of a RDAP.  See 28 C.F.R. §§ 550.56, 550.59; Program Statement 5330.10.

Consequently, at the time he filed this petition, Blow was not eligible for consideration for early release because he had not actually successfully completed the program, notwithstanding the fact that he was ineligible for consideration by virtue of his conviction for an offense involving the possession of a firearm.  Therefore, this habeas petition will be denied for lack of merit.

E.   The BOP Categorical Exclusion is Permissible

Moreover, this Court disagrees with the Arrington decision. In Lopez v. Davis, the Supreme Court agreed with the BOP's argument that "the agency may exclude inmates either categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, see Chevron [v. Natural Resources Defense Council, 467 U.S. 837, 884 (1984)], in a manner that is not arbitrary or capricious, see 5 U.S.C. §

706(2)(A)."   The Court went on, "Having decided that the Bureau
may categorically exclude prisoners based on their preconviction
conduct, we further hold that the [1997 interim regulation] is
permissible.   The Bureau reasonably concluded that an inmate's
prior involvement with firearms, in connection with the
commission of a felony, suggests his readiness to resort to life-
endangering violence and therefore appropriately determines the
early release decision."   531 U.S. at 244 (footnote omitted).

The Court of Appeals for the Sixth Circuit has held that the
Lopez decision "does directly control" the argument that this
challenged regulation is arbitrary.   See Harrison v. Lamanna, 19
Fed. Appx. 342, 2001 WL 1136080 (6th Cir. 2001).   See also
Cushenberry v. Federal Medical Center, 530 F. Supp.2d 908,913
(E.D. Ky. 2008)(same); Robinson v. Gonzales, 493 F. Supp.2d 758,
763-64 (D. Md. 2007)(same); Chevrier v. Marberry, 2006 WL
3759909, *4-5 (E.D. Mich. 2006)("There is nothing unreasonable in
the BOP's common-sense decision that there is a significant
potential for violence from criminals who possess firearms.").
This Court agrees that the Lopez decision directly controls the
claim that this challenged regulation, which is identical to the
1997 interim regulation at issue in Lopez, is arbitrary in

violation of the APA.[7]  Accordingly, petitioner is not entitled to relief on this claim.

IV.  <u>CONCLUSION</u>

For the reasons set forth above, Petitioner's claim challenging his exclusion from consideration for early release under 18 U.S.C. § 3621(e) will be denied.  An appropriate order follows.


        s/Noel L. Hillman
        NOEL L. HILLMAN
        United States District Judge

Dated: November 21, 2008

At Camden, New Jersey

---

[7]  Insofar as Blow contends that the BOP regulations and program statements are invalid because § 922(g) is not a "crime of violence" within the meaning of the governing statute, his argument also fails.  The BOP does not preclude eligibility for early release upon a definition of § 922(g) as a "crime of violence," but rather as an exercise of the discretion vested in the Director of the BOP, as permitted by <u>Lopez</u>.